(No. 30907.—

THE PEOPLE *ex rel.* Edward J. Mosco, Appellee, *vs.* THE SERVICE RECOGNITION BOARD *et al.*, Appellants.

*Opinion filed May 19, 1949.*

Daily, J., specially concurring.
Thompson, J., dissenting.

George F. Barrett, Attorney General, of Springfield, (William C. Wines, James C. Murray, and Raymond S. Sarnow, all of Chicago, of counsel,) for appellants.

Leo K. Wykell, of Chicago, for appellee.

John A. Russell, of Chicago, *amicus curiae*.

Mr. Chief Justice Fulton delivered the opinion of the court:

Edward J. Mosco filed an amended petition for *mandamus* in the superior court of Cook County to compel the State Service Recognition Board to make payment to him of the statutory compensation due under the Illinois Veterans' Compensation Act because of the death of his son,

Marvin Mosco, while a member of the armed forces during World War II and for which the father had regularly filed claim with the Service Recognition Board. The Board has refused payment. Rose Kaiserman Mosco Blair also filed a claim for the compensation with the Service Recognition Board and a counterclaim in the suit demanding the bonus payment be paid to her instead of to the father.

The Service Recognition Board and its members, through the Attorney General, filed a motion in the nature of a demurrer to plaintiff's petition asserting that the compensation under the law of Illinois was payable to the former wife of the deceased soldier and not to the father.

On hearing, the superior court denied the motion to strike and ordered that *mandamus* issue as prayed for in the amended petition of the father, Edward J. Mosco, and further ordered that the counterclaim or cross petition of Rose Kaiserman Mosco Blair be dismissed. The appellants elected to stand by their motion and prayed an appeal to this court. Because the public revenue and constitutional questions are involved, the appeal is properly directed here.

The facts show that the appellee is the father of Marvin Mosco. Marvin was lawfully married to Rose Kaiserman Mosco and remained married to her until his death. Subsequent to Marvin's death, she remarried Sidney Mitchell Blair and is at the present time the latter's wife. No children were born to the marriage of Marvin and the present Mrs. Blair. Marvin and his wife remained together only five hours from the time of the marriage ceremony until Marvin departed for his military assignment. On December 1, 1944, the petitioner was notified of a presumptive finding of death by the War Department for the said Marvin Mosco, as of November 19, 1944. Thereafter on May 18, 1946, the said Rose Kaiserman Mosco was married to Sidney Mitchell Blair.

The sole question for decision on the issues presented is: Shall the widow of a serviceman who remarried prior

to the enactment of the act and the filing of her claim for Illinois Veterans' Compensation be paid such compensation, or shall the surviving father receive such compensation, there being no children born of the marriage of the serviceman, and his mother being deceased?

The sections of the Illinois Veterans' Compensation Act (Ill. Rev. Stat. 1947, chap. 126½, pars. 47 *et seq,*) pertaining to the instant proceeding are the following:

"Section 1-1. Every person who served in active duty in the military or naval service of the United States at any time on or after September 16, 1940, and prior to September 3, 1945, and who, at the time of entering such service, was a resident of the State of Illinois, and who is honorably separated or discharged from such service, or who is still in active service, or has been retired, or has been furloughed to a reserve, and who was in such service for a period of at least sixty days, shall be entitled to receive from the Illinois Compensation Fund of the State treasury compensation of ten dollars for each month that such person was in active domestic service and fifteen dollars for each month that such person was in active foreign service during such period; provided, that any person who was in active duty in the military or naval service of the United States on September 2, 1945, may, for the purpose of qualifying for the minimum compensation under this Act, receive credit for such service thereafter but prior to November 1, 1945; provided further that the minimum compensation payable under this Act shall be fifty dollars. Compensation for a fraction of a month of service shall be paid on the basis of one-thirtieth (1/30) of the above monthly amounts for each day of such service.

"No payment shall be made under this Section to any person who, though in the service, did civilian work at civilian pay; or who has received from another State a bonus or compensation of a like nature as is provided by this Act.

"Service in the merchant marine shall not be considered for the purposes of this Act.

" 'Domestic service' means service within the Continental limits of the United States (excluding Alaska); 'foreign service' means all other service.

"Section 1-2. The husband or wife, child or children, mother, father, person standing in loco parentis, brothers and sisters, in the order named, of any deceased person shall be paid the sum or allowance that such deceased person would be entitled to under section 1-1 of this Act, if living; but in lieu thereof, if any person died while serving in the military or naval forces of the United States on or after September 16, 1940, and prior to September 3, 1945, and his death was service-connected, his survivors as hereinbefore designated and in the order named shall be paid nine hundred dollars ($900.00), regardless of the length of his service."

"Section 1-4. The Service Recognition Board is created, to consist of the Governor, the State Treasurer, and the Adjutant General. This board shall have complete charge and control of the general scheme of payments authorized in this Act and may adopt general rules for the making of such payments, the ascertainment and selection of proper beneficiaries and the amount to which such beneficiaries are entitled, and for procedure."

In obedience to the provisions of the last section, on May 29, 1947, the Service Recognition Board, composed of the Governor, the State Treasurer and the Adjutant General, met and adopted certain rules and regulations, among which was the following:

"A. Husband and Wife. The husband or wife who has remarried is not entitled to the bonus."

The rule-making power of the Service Recognition Board as expressed in rule A is challenged by the Attorney General in this case. It is the position of the Attorney General, as counsel for the Service Recognition Board that,

under the constitution and statutes of the State of Illinois, payment is commanded to be made to the surviving wife notwithstanding her remarriage and that the above rule or regulation is contrary to the statute, unauthorized and void. Further, that the superior court erred in holding it to be a valid and proper rule.

It is first argued by appellants that because the Illinois Bonus Act for World War I veterans specifically excluded from compensation husbands and wives who remarry by inserting the words "(if not remarried,)" and there is no such specific exclusion of wives and husbands who remarry in the provisions of the Illinois Veterans' Compensation Act, (World War II,) therefore, it was most presumably the intention òn the part of the legislature that remarriage should not be a bar to the eligibility of the husband or wife for compensation.

In support of their position appellants cite *Ambler* v. *Whipple,* 139 Ill. 311, and other cases, announcing the familiar rule of statutory construction that a comparison of a prior law with a present one covering the same subject is considered helpful in determining the true intent of the legislature. (50 Am. Jur. 354.) This court has stated another well-established rule as follows: "In interpreting a statute the court must consider the legislative intent and purpose as expressed in the act and then determine whether such intent and purpose have been sufficiently manifested by the statute, always keeping in mind the circumstances under which the act was passed and the purpose to be accomplished." *Lawton* v. *Sweitzer,* 354 Ill. 620.

With the inclusion of section 1-4 of the act quoted above, giving the Service Recognition Board complete charge and control of the scheme of payments authorized in the act, and power to adopt general rules for the making of such payments and the ascertainment and selection of proper beneficiaries, it can hardly be said that it was the clear intention of the legislature that remarriage should

or should not be a bar to the eligibility for bonus on the part of the husband or wife of a deceased veteran. It seems apparent from the section of the act quoted that the legislature intended to give broad and general powers to the Service Recognition Board for the general scheme of payments and specifically authorized and empowered it to make rules for "the ascertainment and selection of proper beneficiaries."

It is seriously contended by the appellants that the adoption of rule A providing that a husband or wife who has remarried is not entitled to the bonus extends beyond the scope of the Board's statutory authority and is in conflict with the provisions and the intendment of said act; and that it is an unconstitutional attempt on the part of the Board to amend the provisions of the act.

The controverted question in this case then is as to whether the Service Recognition Board was lawfully empowered by the act to have administrative discretion to determine the proper beneficiaries as between the father and the former wife of the deceased. In the answer of the Attorney General to the amended petition of appellee he further asserts that such authority is an attempt to vest legislative and judicial powers in the Board and is in conflict with the constitutional doctrine of separation of powers.

The well-established rule is that the legislature, having declared its policy and purpose and provided standards for the exercise of the power, may confer upon administrative authorities the power to enact rules and regulations to promote the purpose and spirit of the legislation and carry it into effect, and, even though such rules and regulations are given the force and effect of law, there is no violation of the constitutional inhibition against delegation of the legislative function. (42 Am. Jur. p. 353.) In *People ex rel. Rice* v. *Wilson Oil Co.* 364 Ill. 406, where the power given to an administrative officer by statute to issue and revoke licenses was under consideration, this court said,

at page 410, "The General Assembly cannot deal with the details of each particular case that may arise in the administration of an act, but must necessarily leave such to the reasonable discretion of administrative officers, and the exercise of such discretion does not constitute the exercise of legislative power." It has also been many times stated by our court that "Administrative and executive officers are frequently called upon, in the performance of their duties, to exercise judgment and discretion, to investigate, deliberate and decide, and yet it has been held that in so doing they do not exercise judicial power within the meaning of the constitutional provision." *Italia America Shipping Corp.* v. *Nelson,* 323 Ill. 427; *Board of Education* v. *Board of Education,* 314 Ill. 83; *Mitchell* v. *Lowden,* 288 Ill. 327.

In the case of *Routt* v. *Barrett,* 396 Ill. 322, certain provisions of World War I Bonus Act were under consideration. There, as in the present act, the Service Recognition Board was empowered to adopt general rules determining the question whether an applicant was a resident of this State at the time he entered service. It was contended that such portion of the act undertook to confer legislative powers upon the Service Recognition Board. This court in that case held that in determining who is a resident of the State, the Board performed no legislative function, and concluded, "Taking into consideration the general purpose and scheme of the whole act, we are satisfied that no legislative functions were conferred on the Service Recognition Board."

It is the further contention of appellants that the words "husband or wife," as used in the Illinois Veterans' Compensation Act, (World War II,) do not contemplate remarriage as a bar to benefits to be received thereunder. This claim appears to be largely based upon cases involving vested rights. In *Yeates* v. *Briggs,* 95 Ill. 79, the homestead rights of the widow were under consideration. In *Wangler Boiler Co.* v. *Industrial Com.* 287 Ill. 118, it was

held that the widow's right to compensation under the Illinois Workmen's Compensation Act was not extinguished by her remarriage, and in *People* v. *Snyder*, 353 Ill. 184, exemption allowed a husband was fixed as at the death of the testator although he had subsequently remarried. Rights of inheritance and many other marital rights are fixed and vested immediately upon the date of the death of the husband and wife, but the appellee contends that such rules do not apply to the present situation.

In the case of *Duckett* v. *Soldiers Compensation Board*, 145 Kan. 520, 66 Pac. 2d 410, cited at length and relied upon by appellants, the legislature of the State of Kansas adopted a statute acknowledging its indebtedness to and promising to pay each person who was a resident of the State of Kansas at the time of entering the service, and who served in the World War and was honorably discharged therefrom, the sum of one dollar per day for each day of service, and provided that such compensation should be in addition to all pay and allowances made by the U. S. Government. The soldier became deceased leaving a wife but no children. The wife subsequently remarried. The Kansas court concluded its opinion as follows: "The State unqualifiedly acknowledged its debt to the appellee's first husband, Ernest Moody. It did not pay him in his lifetime. What was due him passed absolutely to his widow under the statute of descents."

It appears to have been well determined in this State that the payment of a World War bonus or pension is considered to be in the nature of a bounty or gratuity, in recognition of patriotic service, and has never been considered to be a vested right. *Pecoy* v. *City of Chicago*, 265 Ill. 78; *Hagler* v. *Small*, 307 Ill. 460; *McCann* v. *Retirement Board*, 331 Ill. 193.

We believe a "widow" has been generally described as "a woman whose husband is deceased and who has not remarried." This is the definition given by Webster and

other standard dictionaries. In Words and Phrases, vol. 45, page 144, citing many authorities, a widow is described as "a woman who has lost her husband and has not married again." In Bouvier's Law Dictionary, Rawles Third Revision, vol. 2, page 3454, it is stated: "In legal writings, widow is an addition given to a woman who is unmarried and whose husband is dead. A widow who has married again cannot be a widow." See, also, *Town of Solon* v. *Holway*, 130 Me. 415, *Crooks Estate*, 252 N.Y.S. 373. Such dictionary definitions are not always controlling where the language of a statute indicates a contrary intention on the part of the legislature. While the courts have generally held that a wife of a deceased husband relinquishes her status as his "widow" on her remarriage, they have also said that whenever a right by law is attached to a person by reason of her being a widow, such right remains unless other words are used in the act which limit it. Then it is said the law invests them with the name of "husband" or "wife" or "widow" for certain legal purposes, and under these names, although the designation may not come within the definition of the dictionary, property may vest in them, whether it comes to them by legacy or otherwise. (*Re McArthur's Estate*, 210 Cal. 439, 292 Pac. 469, 72 A.L.R. 1318.) This rule would except all vested rights which are fixed at the date of the death of the husband.

We do not believe the present case comes within any such exception to the general rule. Rose Kaiserman Mosco was married to Marvin Mosco, a member of the United States Army Corps on May 29, 1943. His death was reported by the War Department as of November 19, 1944. No children were born of the marriage. On May 18, 1946, Rose Kaiserman Mosco was married to Sidney Mitchell Blair. The Illinois Veterans' Compensation Act (World War II) was passed and approved June 14, 1946, and adopted in the general election November 5, 1946. On May 29, 1947, rule A, in controversy here, was adopted by

the Service Recognition Board. The claim of Rose Kaiserman Mosco Blair did not attach or vest any rights in her at the date of the death of her former husband, Marvin Mosco, nor during the period in which she sustained the relation of his widow.

Absurd and unjust results cited by both appellants and appellees in hypothetical cases emphasize the necessity of an administrative board to look after and investigate the details of each particular case that may arise in the administration of the act. In doing so they necessarily must adopt rules and regulations.

We do not wish to indicate that the claim of every remarried widow can be disposed of in this opinion but, in this particular case under the fact situation before us, we feel that the superior court of Cook County properly ordered that the motion to strike the amended complaint of the plaintiff be denied and that *mandamus* issue as prayed for in the petition of Edward Mosco, and that the cross petition of Rose Kaiserman Mosco Blair be dismissed.

The judgment of that court is, therefore, affirmed.

*Judgment affirmed.*

Mr. JUSTICE DAILY, specially concurring: I agree with the result reached but not with all that is said in the opinion.

Mr. JUSTICE THOMPSON, dissenting:

I am unable to agree that under the Veteran's Compensation Act the Service Recognition Board was lawfully empowered with administrative discretion which permits them to make fundamental changes specifically contrary to the plain provisions of the statute.

Section 1-4 of the Illinois Veterans' Compensation Act provides: "The Service Recognition Board is created, to consist of the Governor, the State Treasurer, and the Adjutant General. This board shall have complete charge and

control of the general scheme of payments authorized in this Act and may adopt general rules for the making of such payments, the ascertainment and selection of proper beneficiaries and the amount to which such beneficiaries are entitled, and for procedure."

Under this section the Service Recognition Board met and adopted certain rules and regulations, the pertinent provision being; and which is under consideration here: "A. Husband and Wife. The husband or wife who has remarried is not entitled to the bonus."

This, of course, presents the question as to whether or not the Service Recognition Board, under section 1-4, was given the power to determine the proper beneficiaries, contrary to the plain language of the statute, which designated who the beneficiary should be. I cannot agree with the majority opinion that they were given such power, or that it was the intention of the legislature that they be given such power by section 1-4 of the act.

Here, although the plain language of section 1-2 of the act specifically provides, without any qualifications or restraints, that "The husband or wife, child or children, mother, father, person standing in loco parentis, brothers and sisters, in the order named, of any deceased person shall be paid the sum or allowance that such deceased person would be entitled to  *  *  *." The import of such language is disregarded in the majority opinion on the theory that the legislature may confer upon administrative authorities the power to enact rules and regulations to promote the purpose and spirit of the legislation and carry it into effect, even though such rules and regulations are given the force and effect of law.

I am of the opinion the conferring of rule-making power upon an administrative agency confers not the power to make the law but merely to carry into effect the will of the legislature as expressed by the statute.

In this case there is a clear expression by the legislature as to the beneficiary. It is a fundamental principle of administrative law that administrative boards, commissions and officers have no common-law powers, but their powers are limited by the statutes creating them to those powers that are conferred expressly or by necessity or fair implication. (*People ex rel. Brecheisen* v. *Board of Review,* 363 Ill. 106; *People ex rel. Harding* v. *Sheridan-Brompton and Annex Building Corp.* 331 Ill. 495; *Potts* v. *Breen,* 167 Ill. 67.

The only power of the Service Recognition Board, as given to it by the statute, was to adopt general rules to determine the questions arising in carrying out the provisions of the act. Certainly they are given no power, or had no power, to change the fundamental law as enacted. To give the board such power is, in effect, giving it the power to amend the provisions of the act. The plain unambiguous intention of the legislature, as expressed in the Illinois Veteran's Compensation Act, was that a surviving wife of a deceased veteran is entitled to compensation. It will be observed in the *Potts case,* heretofore cited, that the rule-making power of the board there was limited to making rules with respect to specific duties and powers conferred by the act.

In view of the well-settled principles precluding an administrative agency from adopting rules beyond the scope of their statutory authority, I think the purported rule or regulation of the Service Recognition Board, on which the superior court based its order, is clearly invalid and constitutes an inadvertent and unconstitutional attempt on the part of the board to amend the provisions of the act. The judgment of the court should be reversed.