In the Matter of the Estate of EDWARD LEANDER CROOK, Also Known as LEO E. CROOK, Deceased.

Surrogate's Court, Oneida County, July 7, 1931.

*James & Leo Coupe* [*Leo E. Coupe* of counsel], for Ruth M. Crook.

*Helen P. McCormick*, as guardian of infants.

*Russell S. Johnson*, special guardian for infants.

*John B. Coppola*, for Ethel Ryan Crook.

EVANS, S.   This is a proceeding to have issued letters of administration in this estate.

Two women each claim to be a widow of the decedent.

The petition is executed by Ruth M. Crook, a resident of the city of Utica, N. Y., who was married to the decedent on April 29, 1918, in New York city.   This marriage was in full force and effect up to the time of the death of the decedent at Miami, Fla., on or about March 8, 1931.   There are no children of this marriage.

On or about June 19, 1923, the decedent went through a marriage ceremony with Ethel Ryan at Boston, Mass.   Two children were born and are now living with their mother in New York city.

This unfortunate situation was created solely by the decedent. The evidence shows that Ethel Ryan was ignorant of the fact that the decedent had a wife and up to the time of his death she supposed that she was legally married to him.   She and the decedent lived together until the month of May, 1927, when they separated.

A third woman appears to have interested the decedent.

Ethel Ryan caused his arrest for the abandonment of herself and children with the result that he was released on giving a bond for $780 conditioned on paying $15 weekly for the support of his family.   An action for divorce was also brought by Ethel Ryan but did not advance beyond the stage of obtaining service on the defendant and the procurement of an order in Supreme Court directing the defendant to pay to the plaintiff the sum of $75 weekly as alimony during the pendency of the action and to pay to her attorney $250 counsel fees.   Practically nothing was paid under order from any court.   It is fair to assume that these domestic troubles provided adequate reason for the decedent to leave New York city.

The primary question presented is what, if any, legal interest have Ethel Ryan and her children in this estate.

" A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either * * * " (Dom. Rel. Law, § 6.)

The exceptions are not set forth because they have no application to the case at bar.

The alleged marriage ceremony in which the decedent and Ethel Ryan participated was void from its inception because the decedent was the lawful husband of Ruth M. Crook and she is his widow.

" A widow is a woman who has lost her husband by death and has not married again." (Webster Dict.)

A determination is asked concerning the legitimacy of the two children of Ethel Ryan and the decedent.

Attention is directed to section 1135 of the Civil Practice Act empowering the court in an annulment action of a void or voidable marriage to declare legitimate the issue of such marriage as to one or both parents under a variety of circumstances therein enumerated.

This power, I think, can only be exercised in an action to annul a marriage and by a court having such jurisdiction. In *Hiser* v. *Davis* (234 N. Y. 300) this rule was announced (at p. 307): " Under the statute the attempt has been made to enable the courts to protect the future of children produced by an illegal alliance and to save them from the brand of illegitimacy which would otherwise come from the unlawful acts of those who had produced them. It was a novel, independent and substantial form of relief which the courts were empowered to grant in an action of annulment. " * * * that provision of the Code expressly requires that the question of good faith of the parents must be settled and the decree of legitimacy made in the annulment action."

The death of the decedent has rendered impossible such a decree. It is fair to state, however, that I am convinced of the good faith of Ethel Ryan in contracting what she supposed was a valid marriage with the decedent and am confident that a court in a proper action would have decreed the children legitimate as to herself. (Civ. Prac. Act, § 1135, subd. 6.)

It follows that Ethel Ryan and her children have no legal interest in this estate. It is claimed in their behalf that the Surrogate's Court of Oneida county is without jurisdiction in this estate and that the decedent was a resident of New York county and that jurisdiction is vested there.

I think that this or any other question concerning this estate may not be raised by them due to their lack of a legal interest therein.

The evidence shows that the decedent left New York city under circumstances that support the belief that he had no intention of returning. Several months prior to his death he had sent to Oneida county certain personal property used by him in connection with his work in shows. He was in Utica in July, 1930, and told his wife of his intention to return to that city permanently. His body was brought from Miami and buried in Oneida county.

Under the circumstances disclosed at the hearing I think that this court has exclusive jurisdiction of this estate and that letters of administration may issue to Ruth M. Crook.

Decreed accordingly.