Carol Ann **MAGNER**, by Alberta C. Magner, her next friend, Plaintiff,

v.

Marion B. **FOLSOM**, Secretary of Health, Education and Welfare, Defendant.

United States District Court
S. D. New York.
July 5, 1957.

---

Warren Whitfield Wells, White Plains, N. Y., Roderick B. Travis, White Plains, N. Y., of counsel, for plaintiff.

Paul W. Williams, U. S. Atty. for Southern District of New York, New York City, Joseph DeFranco, Asst. U. S. Atty., New York City, of counsel, for defendant.

DAWSON, District Judge.

This is a motion for summary judgment brought by an infant plaintiff, Carol Ann Magner, through her mother, Alberta C. Magner, to set aside a determination of the Appeals Council, Social Security Administration, Department of Health, Education and Welfare. Defendant also moves for summary judgment under Rule 56, Fed.R.Civ.P., 28 U.S.C.A. on a cross motion in support of the determination of the Appeals Council.

Plaintiff seeks to have this Court reverse the conclusions of the administrative tribunal as to the determination of her illegitimacy and the subsequent disallowance of her claim for "child's insurance benefits," 42 U.S.C.A. § 402(d). Title 42 U.S.C.A. § 405(g) permits such review by the district court, and states: "The findings of the Administrator as to any fact, if supported by substantial evidence, shall be conclusive * * *." Plaintiff claims that no substantial evidence exists to support the conclusion of the Administrator that she is illegitimate.

### The Facts

The following facts appear to be established without substantial controversy:

■■ The parents of the claimant, George H. Magner and Alberta C. Henke, residents of Mount Vernon, N. Y., obtained divorce decrees from their respective spouses on June 26, 1934, and were subsequently married to each other on July 7, 1934, by a Justice of the Peace in Greenwich, Connecticut. The antecedent divorces of the father and mother of the child were granted by the Civil Court of Juarez, Chihuahua, Mexico, through the efforts of a Mexican attorney, and on the mail order application of Mrs. Magner and Mrs. Henke. Neither of the parties established a residence in Mexico, nor were they, for that matter, ever within its boundaries. There appears to be no doubt that under settled New York law such a divorce is against public policy and completely invalid. Atwater v. Ewing, D.C.E.D.N.Y. 1949, 86 F.Supp. 47. As a result, since George Magner was lawfully married to Louise Magner in 1911 and Alberta Henke to Hubert Henke in 1922, and since both Mrs. Magner and Mr. Henke were alive on July 7, 1934, the attempted marriage of George and Alberta in Connecticut was a nullity.

George Magner and Alberta Henke lived together as man and wife from the date of the attempted marriage until his death on April 28, 1950. They were residents of Rye, N. Y. Claimant Carol Ann Magner was born of this union November 26, 1936 and until the determination of the Board believed herself to be the legitimate daughter of George H. Magner and his wife Alberta. The deceased was a fully insured wage earner under the Social Security Act at the time of his death and claim was thereupon made for a widow's and a child's benefits under its applicable sections.

### Prior Proceedings

The claims were originally denied by a referee appointed by the Agency and later allowed by the District Court for the Southern District of New York. On appeal by the Secretary of Health, Education and Welfare to the Court of Appeals, the mother, Alberta C. Magner, was denied widow's benefits and the child's claim was remanded to the Board for a further decision on the question

of her legitimacy. Magner v. Hobby, 2 Cir., 1954, 215 F.2d 190. The Court ruled that New York Civil Practice Act § 1135(6) [1] controlled the determination, and said: "The critical fact is whether when the marriage in Connecticut was performed the decedent entered into it in good faith in the belief that his former marriage and that of Alberta had been lawfully dissolved by the Mexican divorces." 215 F.2d at page 195. After this remand and on June 24, 1955, the Appeals Council of the Social Security Administration, after a hearing, made the determination that George H. Magner attempted to marry Alberta C. Henke without the prerequisite belief that his prior marriage had been lawfully dissolved, and that as a result Carol Ann Magner was an illegitimate child of such union and as such entitled to no benefits under the Act.

■■ Appellant's brief persuasively sets out arguments which may well indicate that the Administrator's findings as to the father's lack of "good faith" in contracting the second marriage were not "supported by substantial evidence." Be that as it may, this Court believes that such findings are not conclusive on its ultimate determination of the merits of the case. Section 1135(6) of the Civil Practice Act of New York is both mandatory as to part, and permissive as to part.[2] If one of the parties to the void marriage was *competent* to so contract, the child is declared the legitimate issue of the party who entered into the relationship in good faith. But the statute has a permissive provision that reads:

"If either or both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

This portion of the statute is wholly discretionary.

■ Therefore despite the indication of the Court of Appeals to the contrary, the critical fact is not whether the father of the appellant entered into his second marriage in good faith and in the belief that the Mexican divorce had lawfully dissolved his former marital relationship. In order for a court to be required in the exercise of its mandatory power to declare the child legitimate it would have been necessary to establish *two* critical facts, i. e. (1) that the father was in fact competent to marry and (2) that he entered into the marriage in good faith in the belief that the Mexican divorce had lawfully dissolved his former marriage. Since it seems to be undisputed that the Mexican divorce did not dissolve his former marriage the conclusion is irresistible that the father was not competent to contract a second marriage and that Carol was not his legitimate daughter, irrespective of his good faith or lack of it in entering into the second marriage.

■ The Appeals Council had found that the father of appellant was not competent to marry. This finding was

**1.** *"Legitimacy of children.*

"The following provisions govern the effect of declaring a marriage void or annulling a voidable marriage upon the legitimacy of children of the marriage:

\* \* \* \* \*

"6. If a marriage be declared a nullity or annulled upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, if it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and with the full belief that the former husband or wife was dead or that the

former marriage had been annulled or dissolved, or without any knowledge on the part of the innocent party of such former marriage, a child of such subsequent marriage is deemed the legitimate child of the parent who at the time of the marriage was competent to contract. If either or both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

**2.** Bracy v. Bracy, 1938, 167 Misc. 253, 3 N.Y.S.2d 827.

supported by substantial evidence and is therefore conclusive.

However, the Appeals Council determined that they could not exercise the discretionary power granted to the New York courts in § 1135(6) of the Civil Practice Act, under which a New York judge in an annulment proceeding could declare Carol to be the legitimate child of the father even though he was incompetent to marry. The Appeals Council reached this conclusion on the following basis:

"One final matter remains for consideration. Although the terms of the remand, which we must construe from the opinion of the Court of Appeals, are not entirely clear, it appears from the aforesaid opinion of the Court that the 'Administrator,' namely, the defendant Secretary of Health, Education and Welfare, is held, under section 216(h) (1) of the Social Security Act, to be empowered to exercise the same powers possessed by the Supreme Court of New York with respect to a determination of legitimacy of a child of a bigamous marriage under section 1135(6) of the New York Civil Practice Act in an action brought for the annulment of the marriage; in this case the legitimacy of Carol Ann Magner. One basic question, therefore, is whether the Supreme Court of New York would have the power to annul such marriage in an action not brought until after the wage earner's death.

"Section 1134 of New York Civil Practice Act provides:

" 'An action to annul a marriage upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, may be maintained by either of the parties *during the lifetime of the other* or by the former husband or wife.' (Emphasis supplied.)

"It seems clear that where no annulment action has even been commenced by either party, much less a judgment or decree of any nature rendered, prior to the death of a party, the Supreme Court of New York would have no power or jurisdiction to entertain such an annulment action, and hence would not have the ancillary power provided by section 1135(6) of the New York Civil Practice Act to determine the legitimacy of a child of a bigamous marriage. Thus it seems abundantly clear that in the instant case the courts of New York are without power subsequent to the death of the wage earner to declare Carol Ann Magner the legitimate issue of the deceased wage earner.

"If, as we believe to be the case, the courts of the State of New York have no authority under the circumstances of this case to entertain an annulment action (after the death of the deceased wage earner), wherein the legitimacy of the child Carol Ann Magner under section 1135(6) of the New York Civil Practice Act could be determined, and no power to declare such child to be the legitimate child of the decedent, the Secretary clearly has no authority, in any event, under section 216(h) (1) of the Social Security Act to take administratively under color of the New York State law an action which the New York courts themselves would have no power to take.

"Under the provisions of section 216(h) (1), the status of the child, and her entitlement or lack of entitlement to social security benefits is determinable under the applicable law of the State of the decedent's domicile, *as of the time of the death of the wage earner*. To administratively determine that this child, born of a bigamous marriage to parents who were never free to intermarry validly, not legitimated during her father's lifetime, and not capable of legitimation under section 1135 (6) of the New York Civil Practice Act after her father's death, is nevertheless legitimate for pur-

poses of the Social Security Act, would be for the Secretary to *create* status and not merely to determine its existence, and, moreover, to create it *after* the wage earner's death. There appears no authority conferred upon the Secretary under any possible derivative powers under section 216(h) (1) of the Social Security Act to *create* administratively a status of legitimacy, especially when the courts of the pertinent State are without power to create such a status."

This raises the question whether the Administrator could, if he desired to do so, declare in his discretion the child to be legitimate. The Appeals Council found that since such discretionary power which is vested in the courts of New York could not be exercised after the death of the father, therefore, its power, if derived from the same statute, must have expired with the death of the father, and that there is no authority for the Administrator, at the present time, to exercise any such discretion. Was this error?

█ There is a certain basis for supporting the determination of the Appeals Council. The Administrator is directed by the statute to determine the status of a child by applying "such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled * * * at the time of his death." Title 42 U.S. C.A. § 416(h) (1). Therefore, we have the question as to whether the courts of New York in proceedings relating to the devolution of property would have the power under the Civil Practice Act, § 1135(6) to declare a child to be legitimate where the child was the offspring of a marriage which her father was incompetent to contract. Certain courts of the State of New York have indicated that a determination of legitimacy may be made only in an annulment proceeding. Hiser v. Davis, 1922, 234 N.Y. 300, 137 N.E. 596. Following this decision it has been held that a Surrogate's Court

in New York, in a proceeding relating to the devolution of an estate, has no power under § 1135 of the Civil Practice Act to declare children to be legitimate when one of the parents was not competent to contract a marriage. In re Crook's Estate, Sur.Ct. Oneida Co. 1931, 140 Misc. 721, 252 N.Y.S. 373. The court said in that case that it had no doubt that in a proper action the children would have been declared legitimate but that it had no power to make such a determination in a proceeding relating to the devolution of property, inasmuch as a decree of legitimacy may only be made in an annulment action and the death of the decedent had made it impossible to get a decree of annulment.

However, a contrary decision in which a Surrogate's Court exercised authority in similar circumstances to declare a child legitimate is In re Grossman's Estate, Sur.Ct.Bronx Co. 1931, 139 Misc. 646, 248 N.Y.S. 791.

Moreover, the federal courts have held that the Administrator does have power in proceedings under the Social Security Act to exercise the same discretion that the New York Supreme Court would have in an annulment proceeding. These federal precedents would appear to be binding both on the Administrator and on this Court. Bloch v. Ewing, D.C. S.D.Cal.1952, 105 F.Supp. 25; Atwater v. Ewing, supra; Magner v. Hobby, supra.

█ The Court of Appeals in this very case, after consideration of the cases relied upon by the Appeals Council, held that the Administrator has authority to make the determination of the legitimacy of plaintiff under § 1135 (6) of the Civil Practice Act, even though a New York court could only make such a determination in an action for an annulment. This determination of the Court of Appeals is, of course, binding upon the defendant. The Appeals Council found, in effect, that it had no authority to make the discretionary ruling provided for in § 1135(6) of the Civil Practice Act. In doing so they ignored the finding of the Court of Ap-

peals. Since the Appeals Council failed to exercise the discretion which the Court of Appeals stated should be exercised by them it is necessary to remand the matter for further findings and determination by the defendant.

The motions for summary judgment are both denied and the cause remanded for further proceedings in conformity with this opinion. So ordered.